David M. Lilienstein, SBN 218923
david@dllawgroup.com
Katie J. Spielman, SBN 252209
katie@dllawgroup.com
**DL LAW GROUP**
345 Franklin St.
San Francisco, CA 94102
Telephone: (415) 678-5050
Facsimile: (415) 358-8484

Attorneys for Plaintiff,
CATHERINE ROPER

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE ROPER,<br><br>　　　　Plaintiff,<br><br>v.<br><br>HEALTHCARE MANAGEMENT ADMINISTRATORS, INC.; G5 SEARCH MARKETING, INC.; G5 HEALTH and WELFARE PLAN; and DOES 1 through 10,<br><br>　　　　Defendants. | Case No.<br><br>**PLAINTIFF CATHERINE ROPER'S COMPLAINT FOR BREACH OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 (ERISA); BREACH OF FIDUCIARY DUTY; ENFORCEMENT AND CLARIFICATION OF RIGHTS; PREJUDGMENT AND POSTJUDGMENT INTEREST; AND ATTORNEYS' FEES AND COSTS** |

Plaintiff, CATHERINE ROPER herein sets forth the allegations of this Complaint against Defendants HEALTHCARE MANAGEMENT ADMINISTRATORS, INC. ("HMA"); G5 SEARCH MARKETING, INC.; G5 HEALTH and WELFARE PLAN ("the Plan"); and DOES 1 through 10.

### PRELIMINARY ALLEGATIONS

### JURISDICTION

1.　Plaintiff brings this action for relief pursuant to Section 502(a)(1)(B) and (a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Section 1132(a)(1)(B), and (a)(3). This Court has subject matter jurisdiction over Plaintiff's claim pursuant to ERISA

Section 502 (e), (f) and (g), 29 U.S.C. Section 1132 (e), (f), and (g) and 28 U.S.C. Section 1331 as it involves a claim made by Plaintiff for employee benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. Section 1331 as this action involves a federal question.

2. This action is brought for the purpose of recovering benefits under the terms of an employee benefit plan and enforcing Plaintiff's rights under the terms of an employee benefit plan named as a Defendant.

3. Plaintiff seeks relief, including but not limited to: past health benefits in the correct amount related to Defendants' improper denial and underpayment of Plaintiff's claim; prejudgment and post judgment interest; general and special damages; and attorneys' fees and costs; injunctive relief requiring Defendants to pay the correct amount for underpaid benefits pursuant to the Plan's Out-of-Network ("OON") emergency care provision; and any other relief that may arise during the pendency of this action and that the Court may deem appropriate.

**PARTIES**

4. Plaintiff CATHERINE ROPER is, and at all times relevant was, a resident of the State of California.

5. At all relevant times, CATHERINE ROPER participated in an employee welfare benefit plan, G5 HEALTH and WELFARE PLAN, ("the Plan") within the meaning of ERISA section 3(1), 29 U.S.C. § 1002(1), sponsored by her employer.

6. Defendant G5 SEARCH MARKETING, INC. ("G5") was, at all relevant times, the Plan Administrator.

7. At all relevant times, HEALTHCARE MANAGEMENT ADMINISTRATORS, INC. ("HMA") was and is a corporation whose primary place of business is located in the State of Washington.

8. Health claims under the Plan were at all relevant times administered by HMA and/or its third-party designee.

9. At all relevant times, the Plan was a self-funded health and welfare benefit plan that offered, *inter alia*, health benefits to employees and their beneficiaries, including Plaintiff.

This action involves health claims underpaid and denied by the Plan's health claim administrator.

**FACTS**

10. The Plan guarantees, warrants, and promises coverage for medically necessary health care services, care and treatment, including but not limited to emergency health care services provided out-of-network, and the treatment at issue herein.

11. At all relevant times CATHERINE ROPER was a beneficiary of the Plan, and the Plan was in full force and effect.

12. The Summary Plan Description defines Reasonable Reimbursement Method for Out-of-Network Emergency Services as follows:

> Reimbursement amounts for Out-of-Network emergency services will be reasonable if reimbursement is equal to the greatest of the following:
>
> • The amount negotiated with in-network providers for the same emergency service provided (excluding any in-network copayment or coinsurance amount applied). If multiple rates with in-network providers are negotiated, the amount used will be the median of all negotiated rates;
>
> • The amount for the emergency service calculated using the normal method used for calculating other Out-of-Network reimbursements (such as the maximum allowable charge) excluding any in-network copayment or coinsurance imposed; or
>
> • The amount that would be paid under Medicare for the emergency service, excluding any in-network copayment or coinsurance imposed.

13. CATHERINE ROPER suffered a brain injury caused by a bicycling accident in the Lake Tahoe, CA area while away from her home.

14. CATHERINE ROPER was taken by emergency air transport to Renown Medical Health Center.

15. The physicians at Renown Health informed CATHERINE ROPER's husband, Preston Roper, thatthere were no surgeons qualified anywhere nearby to do the complex emergency neurosurgery procedure she needed if she were to have any hope of returning to

normal functioning. The physicians at Renown, therefore told Preston Roper that there was nothing more that they could do for CATHERINE ROPER, and they recommended terminating life-sustaining care.

16. However, Dr. Martin Mortazavi, a neurosurgeon in Los Angeles, CA, was identified and was qualified and willing to perform neurosurgery on CATHERINE ROPER to try to save her life and preserve function.

17. CATHERINE ROPER was transported from Renown to Los Angeles, CA by emergency air ambulance.

18. Martin Mortazavi, M.D. performed neurosurgery on CATHERINE ROPER that not only saved her life, but ultimately, after months of incapacity and intensive rehabilitation, allowed her to return to near pre-injury functioning.

19. At all times relevant, CATHERINE ROPER's treatment was covered under the Plan.

20. Plaintiff filed claims for health benefits with Defendants for CATHERINE ROPER's treatment at both Renown Health and with Martin Mortazavi, M.D.

21. HMA and/or HMA's contracted utilization review service provider denied Plaintiff's claims for treatment at Renown Health and by Martin Mortazavi, M.D.

22. Plaintiff timely appealed HMA's claim denials.

23. HMA did partially reverse its denial of CATHERINE ROPER's claim for services provided by Renown Health but HMA underpaid the benefits it agreed were covered.

24. Plaintiff timely submitted a second-level appeal of HMA'S underpaid benefits and denial of remaining benefits, for all providers.

25. To date, as a result of HMA's and/or its utilization review service provider's denials and underpayments, Plaintiff has been forced to pay for her care and treatment by Martin Mortazavi, M.D. from her own personal funds.

26. Further, as a result of HMA's and/or its utilization review service provider's denials and underpayments, Plaintiff's bill at Renown was never fully paid pursuant to the plan terms.

27. HMA has a direct financial incentive to deny legitimate claims, receiving thousands if not tens of thousands of dollars per year, or more, from the Plan.

28. HMA has a pattern and practice of denying health treatment claims, such as are at issue herein.

29. Plaintiff has exhausted all administrative remedies regarding the denial of CATHERINE ROPER health benefits.

## CLAIMS FOR RELIEF
### FIRST CAUSE OF ACTION
### Recovery of Benefits Due Under an ERISA Benefit Plan
(Against HEALTH MANAGEMENT ADMINISTRATORS, INC.; G5 SEARCH MARKETING, INC.; G5 HEALTH and WELFARE PLAN; and DOES 1-10 For Plan Benefits, Enforcement and Clarification of Rights, Prejudgment and Post Judgment Interest, and Attorneys' Fees and Costs, Pursuant to ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B))

30. Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

31. ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B) permits a plan participant to bring a civil action to recover benefits due under the terms of the plan and to enforce Plaintiff's rights under the terms of a plan.

32. At all relevant times, Plaintiff was insured under the health care plan at issue herein. At all relevant times, CATHERINE ROPER met the criteria for emergency out-of-network treatment required under the terms and conditions of the Plan.

33. Defendants wrongfully denied Plaintiff's claims for benefits for treatment in the following respects, among others:

(a) Failure to authorize and pay for medical services rendered to CATHERINE ROPER as required by the Plan at a time when Defendants knew Plaintiff was entitled to such benefits under the terms of the Plan;

(b) Failure to provide reasonable explanations of the bases relied on under the terms of the Plan, in relation to the applicable facts and plan provisions, for the underpayment and denial of Plaintiff's claims for medical benefits;

(c) After Plaintiff's claims were denied and or underpaid in whole or in part, failure to adequately describe to Plaintiff any additional material or information necessary to perfect her claim along with an explanation of why such material is or was necessary;

(d) Failure to properly and adequately investigate the merits and value of Plaintiff's medical claims and/or provide alternative and medically appropriate courses of treatment;

(e) Failure to provide Plaintiff with a full and fair review pursuant to 29 C.F.R.§ 2560.501-1 (h)(3)(iii) by failing to consult with health care professionals who have appropriate training and experience in the field of medicine involved in the medical judgment;

(f) Failure to thoroughly and independently evaluate both CATHERINE ROPER and her medical records prior to issuing their denials and or underpayments of Plaintiff's claim and her appeals.

33. By denying and or underpaying Plaintiff's claims described above, Defendants have violated, and continue to violate, the terms of the Plan, the terms of ERISA, and Plaintiff's rights thereunder.

34. The provisions of an ERISA plan should be construed so as to render none nugatory and to avoid illusory promises.

**SECOND CAUSE OF ACTION**
**Breach of Fiduciary Duty Under ERISA § 502(a)(3), 29 U.S.C. Section 1132(a)(3)**
**(against Defendants HEALTH MANAGEMENT ADMINISTRATORS, INC.; G5 SEARCH MARKETING, INC.; G5 HEALTH and WELFARE PLAN; and DOES 1-10)**

35. Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

36. At all material times herein, Defendants, and each of them, were fiduciaries with respect to their exercise of authority over the management of the Plan, disposition of Plan assets, and administration of the Plan.

**COMPLAINT** CASE NO.

37. Plaintiff asserts that a claim for benefits due under the Plan does not provide her with an adequate remedy at law in light of Defendants' continuing course of conduct in violating the terms of the Plan and applicable law as described below.

38. ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires fiduciaries to discharge their duties solely in the interests of employee benefit plan participants and beneficiaries and for the exclusive purpose of providing benefits and defraying reasonable expenses of administering the plan.

39. ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), requires fiduciaries to discharge their duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

40. ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), requires fiduciaries to discharge their duties in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of ERISA.

41. In committing the acts and omissions herein alleged, Defendants breached their fiduciary duties in violation of ERISA §§ 404(a)(1)(A), (B) and (D), 29 U.S.C. §§ 1104(a)(1)(A)(B) and (D).

42. At all material times herein, Defendants, and each of them, violated these duties by, *inter alia,* the following:

    a. Consciously and unreasonably failing to investigate all bases upon which to fully pay and honor Plaintiff's claims, and related claims and/or similar claims, for benefits, and consciously and unreasonably failing to investigate all bases to support coverage fairly and in good faith and refusing to give Plaintiff's interests or the interests of the Plan at least as much consideration as they gave their own;

    b. Consciously and unreasonably asserting improper bases for denying full payment of Plaintiff's claims, and related claims and/or similar claims, for health care benefits;

    c. Consciously, unreasonably, intentionally, and without justification underpaying Plaintiff's claims;

    d. Consciously and unreasonably interpreting the Plan in a manner designed to deny and minimize benefits and in a manner that thwarts the reasonable expectations of the Plan's beneficiaries and participants in order to maximize its own profits and minimize the benefits that it pays claimants;

    e. Consciously and unreasonably refusing to fully pay Plaintiff's claims, and related claims and/or similar claims, with the knowledge that Plaintiff's claims and similar claims are fully payable, and with the intent of boosting profits at Plaintiff's and other claimants' expense; and

    f. Contracting with third-party reviewers, including but not limited to the entity referred to as HMA Preferred Network ("HMA") and paying thousands if not tens of thousands of dollars per year, or more, to said third-party reviewers, including, upon information and belief, regular direct deposits into the third-party reviewer bank accounts; but, upon information and belief, conducting no oversight or quality control into said third-party reviewers.

43.   As a result of Defendants' breaches of fiduciary duty, Plaintiff has been harmed, and the Defendants have been permitted to retain assets and generate earnings on those assets to which Defendants were not entitled.

44.   Plaintiff further requests judgment permanently enjoining Defendant HMA from ever again serving as a fiduciary with respect to the Plan, together with attorneys' fees and costs. In addition, Plaintiff seeks appropriate equitable relief from all Defendants, and each of them, including an order by this Court that, based upon principles of waiver and/or estoppel, Plaintiff is entitled to benefits in the amount of the cost of CATHERINE ROPER's treatment at issue herein. In addition, Plaintiff seeks disgorgement of profits, make-whole relief, and that Plaintiff be placed in the position that he would have been in had he been paid the full amount of benefits to which he is entitled, including, without limitation, interest, attorneys' fees and other losses resulting from Defendants' breach.

## THIRD CAUSE OF ACTION
### Breach of Fiduciary Duty Under ERISA § 502(a)(3), 29 U.S.C. Section 1132(a)(3)
### (against Defendant HEALTH MANAGEMENT ADMINISTRATORS, INC.; DOES 1-10)

45. Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

46. 29 U.S.C. § 1132(a)(3) states that a civil action may be brought by a "participant, beneficiary, or fiduciary to (A) enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of this subchapter of the terms of the plan."

47. HMA, as a functional claims administrator is a fiduciary and owes fiduciary duties to Plan participants and beneficiaries, including Plaintiff. Under 29 U.S.C. § 1104(a), HMA is required to discharge its duties with care, skill, prudence, and diligence under the circumstances that a prudent person acting in a like capacity and familiar with such matters would use under 29 U.S.C. § 1104(a). Under ERISA, HMA is required to act in the best interests of Plan participants.

48. Under 29 U.S.C. § 1104(a), HMA, as a functional claims administrator and Plan fiduciary, owed Plaintiff a fiduciary duty to discharge its duties for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the plan.

49. Under 29 U.S.C. § 1104(a), HMA, as a functional claims administrator and Plan fiduciary, owed Plaintiff a fiduciary duty to discharge its duties in accordance with the documents and instruments governing the Plan.

50. In the alternative, HMA, even if not a functional fiduciary, knowingly participated in the fiduciary breaches of Defendants and the Plan set forth above.

51. Plaintiff is entitled to injunctive and/or mandamus relief under 29 U.S.C. § 1132(a)(2)-(3). She is entitled to enjoin any act or practice by HMA that violates ERISA or the Plan, and/or is entitled to seek other appropriate equitable relief that is traditionally available in equity.

52. HMA breached its fiduciary duties to Plaintiff and/or knowingly participated in the Plan's breaches of fiduciary duties by, among other things, refusing to approve coverage for CATHERINE ROPER's covered emergency health treatment.

53. HMA breached its fiduciary duties and/or knowingly participated in the Plan's breaches of fiduciary duties by performing a cursory, incomplete and/or biased review.

54. HMA breached its fiduciary duties to Plaintiff and/or knowingly participated in the Plan's breaches of fiduciary duties by conducting a review that failed to consider CATHERINE ROPER's specific medical needs, nationally recognized professional standards, expert opinion, generally accepted standards of medical practice, or CATHERINE ROPER's specific need for emergency treatment in light of the seriousness of her injuries.

55. HMA breached its fiduciary duties to Plaintiff and/or knowingly participated in the Plan's breaches of fiduciary duties by failing to obtain and review all pertinent medical records, provider reports, facts and information relevant to the determination of whether CATHERINE ROPER's emergency health treatment was covered, by failing to properly review the provisions of the Plan.

56. Plaintiff relied on HMA to her detriment.

57. Plaintiff was actually harmed by HMA's knowing participation in the Plan's breaches of fiduciary duties, and its failure to discharge its duties with the care, skill, prudence, and diligence of a prudent person acting in a like capacity and familiar with such matters.

58. As a consequence of HMA's breach of its fiduciary duties, Plaintiff has incurred legal fees and other costs associated with the investigation of this claim and the prosecution of this action.

59. Plaintiffs are entitled to surcharge relief as a result of HMA's breach of fiduciary duties.

60. Pursuant to 29 U.S.C. § 1132(g), Plaintiffs are entitled to recover their attorneys' fees and costs incurred herein from HMA.

COMPLAINT                                                                                      CASE NO.

## **PRAYER FOR RELIEF**

## **AS TO ALL DEFENDANTS**

**WHEREFORE,** Plaintiff prays that the Court grant the following relief:

61. Declare that Defendants violated the terms of the Plan by failing to provide covered health benefits;

62. Order Defendants to pay the health benefits due, together with prejudgment interest on each and every such benefit payment through the date of judgment at the rate of 9% compounded;

63. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA Section 502(g), 29 U.S.C. Section 1132(g);

64. Provide such other relief as the Court deems equitable and just.

**WHEREFORE,** Plaintiff prays that the Court grant the following relief as to the SECOND AND THIRD CAUSES OF ACTION:

65. Order Defendants cease denying coverage of emergency health claims covered under the Plan;

66. To the extent the Court remands Plaintiff's claim for benefits to Defendants, Order that Defendants reevaluate Plaintiff's claims in compliance with the terms of the Plan that promise care and treatment in emergencies;

67. Order that each fiduciary found liable for breaching his/her/its duties to disgorge any profits made through the denial of medically necessary claims through the use of inconsistent care guidelines. This includes, but is not limited to, any violation of ERISA §§ 404 and 406;

68. For appropriate equitable relief pursuant to 29 U.S.C. §§ 1132(a)(2) and (a)(3), including but not limited to, a declaration of Plaintiff's rights to a full and fair review under ERISA, and a declaration of Plan participants' and beneficiaries' rights to a full and fair review;

69. For surcharge relief;

70. An injunction against further denial of Plaintiff's benefits pursuant to 29 U.S.C. §§ 1132(a)(3);

71. Provide such other relief as the Court deems equitable and just.

Dated: August 29, 2023               Respectfully submitted,

**DL LAW GROUP**

By: */s/ David M. Lilienstein*
David M. Lilienstein
Katie J. Spielman
Attorneys for Plaintiff, CATHERINE ROPER

**COMPLAINT**                                                                          **CASE NO.**